## MADDOCKS *vs.* JELLISON.

In an action by one claiming under A. to recover 100 acres of land of B., the title and claim of the latter was holden not to be affected by a prior judgment against him for the recovery of dower in the premises, by the widow of A., except to the extent of her dower.

One holding an estate in dower under the widow, cannot, after the termination of the estate, set up a claim for "betterments" against the reversioner.

THIS was a writ of entry in which the demandant claimed twelve undivided fourteenth parts of a lot of land lying on *Union river* — and was submitted for the opinion of the Court upon the following agreed statement of facts : —

The demandant claimed under his father, *Caleb Maddocks* — and the tenant under the heirs of *Benjamin Milliken*. *Maddocks*, the father, entered upon a lot of land containing one hundred acres, including the demanded premises, in the spring of the year 1785. In *September* following, he built a house thereon, and continued in possession, cutting the wood and timber on all parts of it, occupying and improving it as his own, until he conveyed it to the demandant, *September* 25, 1822, by deed, recorded *July*, 1824. — Such occupation, however, being subject to the dower of *Phebe Milliken*, widow of *Benjamin Milliken*, and to the right of *John Jellison* and wife, under a judgment for one undivided fifteenth part.

After the entry of *Caleb Maddocks*, in 1785, he commenced clearing and fencing ; and as early as 1793, he had one half of the whole lot cleared and surrounded by fence, including that part now demanded — which fences have been kept up to the present time.

As early as 1773, one *James Smith* took up the lot in question, and occupied it until *April 24th*, 1776, clearing and enclosing eight or ten acres, and erecting buildings thereon, when he gave a deed to *Milliken*, releasing all his right to the 100 acres, which was not recorded until 1807. After he left it, one *Josiah Garland*, who lived on an adjoining lot, occupied and improved it, and as he said at the time, at the request of *Benjamin Milliken* — and as *Milliken* also said, in payment of a sum due from *Milliken* to *Garland*, for labor. *Garland* pastured his sheep on the lot, and kept up the fences round four or five acres, and otherwise improved it, until *Caleb Maddocks*, the demandant's grantor, entered upon *Garland* and drove him off.

*Milliken* never occupied the land himself, but lived on an adjoining lot — nor did any person occupy under him, except *Garland*.

In 1805, after *Milliken's* decease, *Phebe Milliken*, his widow, commenced her action against *Caleb Maddocks*, to recover her dower, and in *June*, 1809, had judgment therefor, and the lot now in controversy, parcel of the 100 acres, was assigned to her. The tenant entered upon it under a lease from *Phebe Milliken*, and has continued to occupy until the present time, refusing to yield the possession to the demandant, though the widow died in 1824.

It was agreed that *John Jellison*, the father of the tenant, and the wife of said *John Jellison*, who was a daughter of *Benjamin Milliken*, recovered judgment against *Caleb Maddocks*, for one undivided fifteenth part, and entered thereon under his writ of execution, *August*, 1815.

The tenant further relied upon conveyances from several of the heirs of *Benjamin Milliken*, made between *September*, 1812, and *May*, 1830. And it was agreed that the betterments made by the tenant, for which he set up a claim in case of the plaintiff's recovery, were of the value of \$350 — and that the value of the land, in a state of nature, was \$3 per acre.

*Abbot* and *Wood*, for the demandant, cited *Co. Litt.* 142; 2 *Black. Com.* 175; 4 *Bac. Abr. tit. Reversion and Remainder; Proprietors Kennebec Purchase* v. *Call*, 1 *Mass.* 483; *Hathorne* v. *Haines*, 1 *Greenl.* 288.

Maddocks v. Jellison.

*Deane* and *Hathaway*, for the tentant, contended that the elder and better title was in *Milliken*. The widow was in of her husband's title. She acquired no new right — but her dower was a continuation of her husband's seizin. *Portland* v. *Windham*, 4 *Mass.* 384; *Keith* v. *O'Neil*, 9 *Mass.* 13.

She therefore must be considered as holding for the benefit of those who had the right, to wit, the heirs of *Milliken*.

That the defendant may show title acquired after the commencement of the action, they cited *Poor* v. *Robinson*, 10 *Mass.* 131.

WESTON J. delivered the opinion of the Court.

There is no evidence that *Smith*, who settled on the lot in question as early as 1773, had any other title thereto, than what arose from an entry thereon, and the occupation of eight or nine acres, next the river. In 1776, he conveyed the lot by release to *Benjamin Milliken*; but that deed was not recorded, until 1807. From the declarations of *Garland*, while in actual possession of the part cleared by *Smith*, which may be regarded as competent proof, he held and occupied under *Milliken*. The actual seizin of the latter of the part enclosed by fence, adjoining the river, continued until the spring of 1785, when he was disseised by *Caleb Maddocks*, who prevented the tenant of *Milliken* from having any use or occupancy of any part of the land. *Maddocks* continued to extend his improvements to other parts of the lot; enclosing and fencing as he cleared.

It does not appear that any movement was made to assert the *Milliken* title until 1805, when his widow brought an action to recover her dower on the lot, upon which, in *June*, 1809, judgment was rendered in her favor. The right of entry, on the part of *Milliken* and his heirs, had then been lost by lapse of time. It has since been asserted by one of his heirs, who in *1815*, recovered judgment for one fifteenth part of the premises, not now in controversy. We cannot regard the judgment in favor of the widow, as affecting the *Maddocks* title, only to the extent of her dower. It was founded upon the seizin of her husband, during the coverture; and is perfectly consistent with a subsequent seizin in *Maddocks*.

Certain deeds are relied upon by the tenant from certain of the heirs of *Milliken,* the earliest dated in 1812, and three of them since the commencement of this action. Nothing passed by these deeds, the grantors having no seizin, and having since 1805 lost even their right of entry into the land. The seizin of *Caleb Maddocks* having continued for nearly fifty years, cannot be further disturbed by any title derived from *Milliken.* The demandant, being the grantee of the elder *Maddocks,* has maintained his title. The widow had a lawful estate, which terminated with her life, and cannot be extended further, by reason of any improvement, which he may have caused to be made upon the land assigned to her. Six years had not elapsed between her decease and the commencement of this action ; so that the possession of the tenant since, has not been long enough to entitle the tenant to any relief, under the act for the settlement of certain equitable claims, arising in real actions.

*Judgment for the demandant.*